IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT SIMMONS and
JAN SIMMONS,

    Plaintiffs,

v.                                CASE NO. 5:15cv321-RH/GRJ

WEST FLORIDA ELECTRIC
COOPERATIVE ASSOCIATION, INC.,

    Defendant.

_____/

## ORDER DENYING THE MOTION TO REMAND

The plaintiffs are members of a rural electric cooperative. The plaintiffs assert that Florida law requires the cooperative to make "patronage refunds" to its members—in effect, to refund amounts collected from members in excess of the amount needed for specified purposes. The cooperative asserts the refunds would, at least in part, violate a federal rule. The plaintiffs filed the case in state court. The cooperative removed the case to this court based on the "federal officer" removal statute, 28 U.S.C. § 1442(a)(1). The plaintiffs have moved to remand. This order denies the motion.

I

In 1936, at the depth of the Great Depression, many homes in rural America had no electricity. Congress adopted the Rural Electrification Act in that year to serve an important national goal: to "bring electric power to parts of the country not adequately served by commercial companies." *Arkansas Elec. Co-op. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 380-81 (2006). Toward that end, the Act included provisions designed to encourage the formation of rural electric cooperatives. Soon after the Act was adopted, the defendant in this case, West Florida Electric Cooperative Association, Inc. ("West Florida"), was created. West Florida is a not-for-profit entity that provides electricity to members in parts of northwest Florida—parts that were in 1937 and to a large extent still are rural.

The Rural Electrification Act does not preempt state regulation of rural electric cooperatives. And so, for example, states may regulate a cooperative's rates. A Florida statute requires a cooperative to make refunds—sometimes called "patronage refunds"—when the cooperative's revenues for a given year exceed amounts needed for specified purposes. *See* Fla. Stat. § 425.21. The plaintiffs assert that West Florida has failed to make refunds required by the statute.

Despite leaving room for state regulation, the Rural Electrification Act created a federal agency with a role in fostering and protecting cooperatives. One of the roles of the agency, now known as the Rural Utilities Services ("RUS"), is to

make loans to cooperatives. The loan documents sometimes, perhaps always, require the borrowing cooperative to obtain RUS approval before making patronage refunds. A federal rule whose validity has not been challenged sets out the conditions under which RUS approval will be given. *See* 7 C.F.R. § 1717.617. One condition is that after the refunds, the cooperative's equity must still equal or exceed 30% of its assets. West Florida says this provision prevents it from making patronage refunds in the amounts claimed by the plaintiffs.

## II

The plaintiffs filed this action in state court. The well-pleaded complaint asserts only a state-law claim. West Florida thus could not remove the action as one "arising under" federal law. *See* 28 U.S.C. § 1331. As is well settled, a federal defense is not enough to provide "arising under" jurisdiction. *See, e.g.*, *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction."); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908).

West Florida removed the action based instead on the "federal officer" removal statute, 28 U.S.C. § 1442(a)(1). The statute allows removal of:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.

The Supreme Court explained the history and purpose of the statute in *Watson v. Philip Morris Companies*, 551 U.S. 142 (2007). The explanation is not repeated here.

As *Philip Morris* squarely holds, federal regulation is not enough to allow a private individual or entity to remove an action under the statute. The statute is not an end-run around the well-pleaded-complaint rule.

But this case is different. *Philip Morris* involved cigarettes, a product that was regulated but whose distribution was in no sense a national goal. This case, in contrast, involves a rural electric cooperative of the kind whose existence Congress set out to foster and maintain in pursuit of an important national goal: bringing electricity to rural America.

A principal goal of the federal-officer removal provision is to protect those acting on behalf of the federal government from being prosecuted or sued in states hostile to the federal undertaking. In an earlier age, a classic example was revenue officers—and those assisting the revenue officers—fighting moonshiners. Fostering rural electrification is every bit as important as quelling illegal liquor. Some would say more important. In this unique setting—involving cooperatives set up as part of Congress's plan to provide rural electricity when those in private industry would not do it—applying the federal-officer removal statute is fully consistent with the purpose of the statute.

A hypothetical underscores the point. Suppose that instead of suing the cooperative, the plaintiffs sued its trustees, asserting that they breached their fiduciary duty by failing to approve the patronage refunds. Or suppose a state brought criminal charges against trustees for failing to approve state-law-mandated refunds. The trustees would surely assert in response that they could not approve the refunds—that the federal rule and loan documents prohibited it. This would be individuals acting to enforce federal law, as directed by a federal agency, but against a state's contrary position. Not quite like a shoot-out with revenuers but still the kind of contest for which Congress has made a federal forum available.

West Florida is a not-for-profit corporation, not an individual. But as both sides agree, West Florida is nonetheless a "person" who can invoke the federal-officer removal statute in appropriate circumstances. That the plaintiffs have sued the corporation and not the individual trustees makes no relevant difference.

To invoke the statute, a "person" must assert a colorable federal defense. *See Mesa v. California*, 489 U.S. 121 (1989); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996). And there must be a " 'causal connection between what the officer has done under asserted official authority' and the action against him." *Magnin*, 91 F.3d at 1427 (quoting *Maryland v. Soper*, 270 U.S. 9, 31 (1926)).

West Florida has easily met these requirements here. West Florida asserts that making the patronage refunds—at least in the full amounts the plaintiffs have demanded—would violate federal law. West Florida asserts that this is why it has not made the refunds. The assertions are supported by a federal rule. The plaintiffs correctly note that the Rural Electrification Act does not preempt all state regulation of cooperatives, but that misses the point. The issue is not whether the Act preempts all state regulation but only whether federal law prohibits application of this specific state statute in the manner the plaintiffs assert is proper. West Florida's position is at least colorable, which is all that is required to support removal: the "defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Magnin*, 91 F.3d at 1427 (11th Cir. 1996) (quoting *Mesa*, 489 U.S. at 131).

The bottom line is that West Florida properly removed this action. This ruling accords with on-point decisions of other district courts. *See Cessna v. REA Energy Cooperative, Inc.*, No. 3:16-42, 2016 WL 3963217 (W.D. Pa. July 21, 2016); *Sparks v. Cullman Elec. Coop.*, No. 3:15-CV-387-MHH, 2016 WL 927032 (N.D. Ala. March 11, 2016); *Davis v. Cent. Ala. Elec. Co-op.*, 2015 WL 4742496 (S.D. Ala. Aug. 11, 2015); *Kritner v. Arab Elec. Co-op.*, No. 4:15-CV-341-VEH, 2015 WL 2354414, at *1 (N.D. Ala. May 14, 2015); *Lake v. Marshall-DeKalb Elec. Co-op.*, 4:15-CV-339-VEH, 2015 WL 2354384, at *1 (N.D. Ala. May 14,

2015); *Caver v. Cent. Alabama Elec. Co-op.*, No. CIV.A. 15-0129-W, 2015 WL 4742490, at *9 (S.D. Ala. Aug. 11, 2015). It bears noting, though, that an appeal from the decision in *Caver* is pending in the Eleventh Circuit, with oral argument set for November 16, 2016. The plaintiffs may of course renew their challenge to jurisdiction if warranted by the Eleventh Circuit decision when it is issued.

Finally, a note is in order about the parties' respective positions. In the complaint, the plaintiffs assert that West Florida must refund "all excess revenue" as calculated under Florida Statutes § 425.21. This apparently would include amounts that, at least under West Florida's view of federal law, West Florida cannot properly refund, because of the 30% requirement. That is the basis of West Florida's removal. But in the motion to remand, the plaintiffs seem to say they seek only to compel refunds that are consistent with the 30% requirement. It is not at all clear that there is a basis for West Florida to withhold refunds it could make without violating the 30% requirement. So if the plaintiffs indeed are seeking only such refunds, and West Florida has no basis not to make them, this should be an easy case. The attorneys should address this in the Federal Rule of Civil Procedure 26(f) conference that will now go forward.

For these reasons,

IT IS ORDERED:

1. The motion to remand, ECF No. 10, is denied.

2. The attorneys must confer under Federal Rule of Civil Procedure 26(f) by January 9, 2017, and must file a 26(f) report by January 17, 2017.

SO ORDERED on December 22, 2016.

                                s/Robert L. Hinkle  
                                United States District Judge