IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT SIMMONS and
JAN SIMMONS,

    Plaintiffs,

v.                                        CASE NO. 5:15cv321-RH/GRJ

WEST FLORIDA ELECTRIC
COOPERATIVE ASSOCIATION, INC.,

    Defendant.

_____/

## ORDER OF DISMISSAL

The plaintiffs are members of a rural electric cooperative. Their complaint seeks to compel the cooperative to refund excess revenues as allegedly required by Florida Statutes § 425.21. The cooperative has moved to dismiss. After oral argument, a ruling was announced on the record granting the motion. This order confirms and briefly summarizes the ruling.

I

In 1936, at the depth of the Great Depression, many homes in rural America had no electricity. Congress adopted the Rural Electrification Act in that year to

serve an important national goal: to "bring electric power to parts of the country not adequately served by commercial companies." *Arkansas Elec. Co-op. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 380-81 (2006). Toward that end, the Act included provisions designed to encourage the formation of rural electric cooperatives. In 1939, the State of Florida adopted its Rural Electric Cooperative Law, which is codified as chapter 425 of the Florida Statutes. The relevant provisions have not been changed since that time.

The defendant West Florida Electric Cooperative Association, Inc. ("the Association") was created soon after adoption of the federal statute. As is uncontested, the Association is a cooperative governed by chapter 425. The Association provides electricity to members in parts of northwest Florida—parts that were in the 1930s and to a large extent still are rural.

The plaintiffs are members of the Association. They assert the Association has failed to refund to members excess revenues as allegedly required by Florida Statutes § 425.21. The plaintiffs assert claims directly under the statute, for breach of contract, for unjust enrichment, and under the Florida Deceptive and Unfair Practices Act, Fla. Stat. §§ 501.201–.208. The Association has moved to dismiss the complaint for failure to state a claim on which relief can be granted.

II

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a motion to dismiss, the complaint's factual allegations, though not its legal conclusions, must be accepted as true. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As both sides agree, the Association's bylaws, which are specifically referred to in the complaint and are included in this record, may properly be considered on the motion to dismiss.

III

The case turns on a single, straightforward question: does the complaint allege facts that, if proven, would constitute a violation of § 425.21? The statute provides that, "unless otherwise determined by a vote of the members," excess revenues—determined under a formula set out in the statute—must be "distributed" to a cooperative's members "as patronage refunds." The full text of the statute is included in the appendix to this order.

The complaint alleges that the Association allocates accumulated earnings to members by crediting their individual capital accounts but that the Association does not pay the members in cash. A capital account is of course much less

valuable to a member than the same amount of cash. A member cannot buy groceries or pay bills with a capital account.

The amount of earnings the Association allocates to members' capital accounts is not the same as the amount of excess revenues calculated under the statutory formula. But for present purposes this does not matter. The complaint adequately alleges that the Association has received excess revenues each year. The allegation may or may not be true, but that is not an issue that can be determined on the motion to dismiss.

Reasonable arguments can be made on both sides of the question whether the statutory requirement to "distribute" the properly calculated amount as a "patronage refund" means the amount must be paid out in cash rather than credited to a capital account. On the one hand, to "distribute" could easily be read to mean simply to allocate, including by allocating the proper amount to a capital account. *See, e.g.*, *Distribute*, WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (1970) (listing as the first definition "to divide among several or many: apportion"). On the other hand, to "refund," standing alone, could well be read to mean to pay back in kind—to pay back in cash the excessive portion of the cash paid in by members to purchase electricity. *See, e.g.*, *Refund*, WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (1970) (listing as definitions "to give or put back" and "to return (money) in restitution, repayment, or balancing of accounts"). Still, the statute uses

"refund," standing alone, only in the heading; in the text, the statute refers to "patronage refunds," a term that, in this industry, might well include capital allocations.

In addressing a similar Alabama statute, the Eleventh Circuit said that the requirement to "distribute" excess revenues through "patronage refunds" or rate reductions, in a manner provided in the bylaws, could be satisfied by crediting capital accounts—cash refunds were not required. *See Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1147-48 (11th Cir. 2017). The Alabama and Florida statutes are not identical, so *Caver* is not dispositive here. But the decision cuts strongly in the Association's favor.

A definitive ruling on this issue is unnecessary in this case. The Florida statute requires a cooperative to distribute excess revenues "unless otherwise determined by a vote of the members." Fla. Stat. § 425.21. Here it is undisputed that in 2000 the members voted to adopt a bylaw authorizing the capital-account procedure that the Association has followed ever since. This was a "vote of the members" that eliminated any requirement to make a cash distribution, even if the statute otherwise would have required such a distribution.

To be sure, the plaintiffs say the requirement for a cash distribution may be overridden only by a stand-alone vote of the members—that adopting a bylaw is not enough. And the plaintiffs say there must be a vote each year—that a vote

cannot remain in effect indefinitely or until there is a contrary vote. But nothing in the statute supports these assertions. The best reading of the statute's plain terms is that members may vote to dispense with any requirement to distribute excess revenues. That is what the members did when they adopted the bylaws.

The plaintiffs also say that accumulating excess revenues for as long as the Association has done it is a deceptive and unfair trade practice, actionable under the Florida Deceptive and Unfair Trade Practices Act, even aside from any violation of § 425.21. But that is not so. So long as it does not deceive, a seller of goods and services ordinarily may charge whatever price it chooses, subject only to any statutory restriction. A seller ordinarily has no obligation to refund any portion of the purchase price, even if it turns out that the seller is making large profits. Here the plaintiffs have not alleged that the Association made any untrue or deceptive statement about the Association's prices or about its refund policy. Absent a violation of a statute or an untrue or deceptive statement, merely collecting a high price and refusing to refund any portion of it is not a violation of the Florida Deceptive and Unfair Trade Practices Act.

IV

For these reasons and those set out on the record,

IT IS ORDERED:

The motion to dismiss, ECF No. 15, is granted. The clerk must enter judgment stating, "This action was resolved on a motion to dismiss. It is adjudged that the plaintiffs Robert Simmons and Jan Simmons recover nothing on their claims against the defendant West Florida Electric Cooperative Association, Inc. The claims are dismissed on the merits."

SO ORDERED on March 7, 2017.

> s/Robert L. Hinkle
> United States District Judge

# APPENDIX: FLORIDA STATUTES § 425.21

425.21  Refunds to members.—Revenues of a cooperative for any fiscal year in excess of the amount thereof necessary:

(1) To defray expenses of the cooperative and of the operation and maintenance of its facilities during such fiscal year;

(2) To pay interest and principal obligations of the cooperative coming due in such fiscal year;

(3) To finance, or to provide a reserve for the financing of, the construction or acquisition by the cooperative of additional facilities to the extent determined by the board of trustees;

(4) To provide a reasonable reserve for working capital;

(5) To provide a reserve for the payment of indebtedness of the cooperative maturing more than 1 year after the date of the incurrence of such indebtedness in an amount not less than the total of the interest and principal payments in respect thereof required to be made during the next following fiscal year; and

(6) To provide a fund for education in cooperation and for the dissemination of information concerning the effective use of electric energy and other services made available by the cooperative,

shall, unless otherwise determined by a vote of the members, be distributed by the cooperative to its members as patronage refunds in accordance with the patronage of the cooperative by the respective members paid for during such fiscal year. Nothing herein contained shall be construed to prohibit the payment by a cooperative of all or any part of its indebtedness prior to the date when the same shall become due.